FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 18, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMANDA W., | NO:  1:20-CV-03095-LRS |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 13 and 14. This matter was submitted for consideration without oral argument. The Plaintiff is represented by Attorney D. James Tree. The Defendant is represented by Special Assistant United States Attorney Leisa A.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER ~ 1

Wolf.  The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed.  For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 14, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 13.

## JURISDICTION

Plaintiff Amanda W.[2] filed for supplemental security income and disability insurance benefits on April 26, 2016, alleging an onset date of April 14, 2016.  Tr. 225-34.  At the second hearing, Plaintiff amended the alleged onset date to September 1, 2017.  Tr. 53.  Benefits were denied initially, Tr. 118-26, and upon reconsideration, Tr. 129-42.  A hearing before an administrative law judge ("ALJ") was conducted on January 11, 2018, and a subsequent hearing was conducted on March 13, 2019.  Tr. 34-69.  Plaintiff testified at the first hearing, and she was represented by counsel and testified at the second hearing.  *Id*.  The ALJ denied benefits, Tr. 12-33, and the Appeals Council denied review.  Tr. 1.  The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.  Only the most pertinent facts are summarized here.

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial.

ORDER ~ 2

Plaintiff was 38 years old at the time of the second hearing.  *See* Tr. 254.
She completed two years of college.  Tr. 54.  She lives in the basement of her
parents' house.  Tr. 53.  Plaintiff has work history as a merchandise marker,
cosmetologist, sales attendant, sales route driver, animal attendant, and grocery
checker.  Tr. 64.  She reported that she left her last job because of headaches and
anxiety.  Tr. 56.

Plaintiff testified that she can no longer work because she has "bad anxiety"
that causes her bipolar to "flare," which in turn causes tension headaches.  Tr. 55-
56.  She reported that her bipolar manifests as manic episodes that turn to
depression, and it can go back and forth quickly.  Tr. 56-57.  She testified that if
she is stressed out she gets headaches, which seems to trigger her mental illness
and thoughts of self-harm.  Tr. 58-59. She does not leave the house much, and she
goes to the store with another person because she gets "stressed out" by people. Tr.
59-61.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social
Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is
limited; the Commissioner's decision will be disturbed "only if it is not supported
by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,
1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a
reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159
(quotation and citation omitted).  Stated differently, substantial evidence equates to

ORDER ~ 3

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in

ORDER ~ 4

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER ~ 5

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 1, 2017, the amended alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: affective disorder (variously classified as bipolar disorder versus depressive disorder) and anxiety disorder (sometimes characterized as PTSD). Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18-19. The ALJ then found that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: limited to performing simple, routine tasks; in a routine work environment with simple, work-related decisions; only having superficial interaction with co-workers, and incidental interactions with the public (meaning that interaction with public not part of the job duty); no jobs

ORDER ~ 7

working with children or in a crowded work environment, where people would be crowded closely to her specific work area, but not that there could not be workers in the general proximity.

Tr. 21.  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 25.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: cleaner, housekeeping, inspector and hand packager, and production assembler.  Tr. 26.  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from September 1, 2017, through the date of the decision.  Tr. 27.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 13.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims; and

2. Whether the ALJ properly considered the medical opinion evidence.

## DISCUSSION

### A. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which

ORDER ~ 8

could reasonably be expected to produce the pain or other symptoms alleged."

*Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not

required to show that his impairment could reasonably be expected to cause the

severity of the symptom he has alleged; he need only show that it could reasonably

have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591

(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms; however,

ORDER ~ 9

Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons.  Tr. 21.

First, the ALJ found that Plaintiff "testified that her job at Value Village ended because the store closed, not because of her impairments.  Thus, by [Plaintiff's] testimony, she seems to have found a type of job she could perform with her mental symptoms and limitations.  This is consistent with the testimony of the vocational expert [] that someone with [her RFC] could return to [Plaintiff's] prior job as a merchandise marker."  Tr. 22.  Plaintiff argues this is not a valid reason to reject her symptom testimony because her symptoms "markedly worsened" after she left that job.  ECF No. 13 at 14 (citing Tr. 948 (labile), 951 (somewhat labile), 962 (some disorganized in speech), 964 (disorganized), 969 (labile mood and rapid speech), 977 (somewhat anxious)).  However, these same records also noted that Plaintiff was engaged, responsive, and demonstrated good understanding.  Moreover, Plaintiff specifically testified that her job at Value Village ended because the store closed, at which point she collected unemployment; and she was unable to transfer to another store, "sadly," because other Value Village stores in the area "had already closed."  Tr. 54, 63.  Thus, based on Plaintiff's own testimony, it was proper for the ALJ to discount her symptom claims because she stopped working for reasons unrelated to the allegedly disabling condition.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th

Cir. 2001).  This was a clear and convincing reason to reject Plaintiff's symptom claims.

Second, the ALJ found that Plaintiff's statements are inconsistent because she "appeared to have stabilized by the amended onset date." Tr. 21-23.  The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  20 C.F.R. § 404.1529(c)(2); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence).  Moreover, a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations.  *See Tommasetti*, 533 F.3d at 1040; *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits).  In support of this finding, the ALJ initially acknowledged that prior to the amended onset date of September 1, 2017, Plaintiff had a history of mental health symptoms and treatment, including being "variously diagnosed" with bipolar disorder, PTSD, anxiety, and hallucinations; she was admitted involuntarily for treatment several years before the alleged onset date; and she had multiple visits to the emergency room in 2016 for headaches and mental health symptoms including anxiety, panic attacks, and hallucinations.  Tr. 22.

However, the ALJ also set out the medical evidence contradicting Plaintiff's claims of disabling limitations, including signs of improvement in 2016 and

ORDER ~ 11

evidence that Plaintiff "had greatly stabilized by the amended onset date."  Tr. 22.

For example, at the emergency room in April 2016 she had "an essentially normal

examination with no remarkable findings other than being mildly tearful"; in May

2016 her anxiety and depression were noted as stable; in May 2016 she reported

she was not having panic attacks; in June 2016 Plaintiff reported having a good

response to medication; and "[m]edical records from late 2017 and early 2018

contain very little discussion of mental health symptoms or mental diagnoses," and

her depression screenings were "generally negative."  Tr. 22, 363 (mildly tearful

but fully oriented), 468 (anxiety and depression are stable), 717 ("doing good" and

denies depression or anxiety), 780, 839, 841, 843-47 (mood and affect normal),

849, 852, 1205, 1209 (denies problematic depression), 1217 (upbeat mood and

congruent affect), 1220, 1222, 1225, 1227 (denies problematic anxiety or

depression), 1235, 1238-39, 1242, 1244, 1249 (upbeat mood and congruent affect),

1252, 1260, 1262, 1264, 1266 (euthymic mood and congruent affect), 1273, 1284,

1289, 1293, 1302, 1304.

       In addition, the ALJ noted a break in mental health treatment between March

2017 and August 2017, and cited evidence that upon returning therapy around

September 2017, the alleged amended onset date, Plaintiff reported a bad reaction

to prednisone, being "somewhat" anxious, hearing voices, and having non-linear

thoughts.  Tr. 23; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (unexplained, or

inadequately explained, failure to seek or comply with treatment may be the basis

for rejecting Plaintiff's symptom claims unless there is a showing of a good reason

ORDER ~ 12

for the failure).  However, Plaintiff "quickly improved and stabilized with treatment," for example, in October 2017 she reported feeling better, with improved mood and sleep; she added Lexapro and denied depression and reported feeling calm overall; and she had decreased anxiety and noted she did not "need" anxiety medication by December 2017.  Tr. 23, 937, 957.  Finally, Plaintiff began participating in DBT therapy and consistently noted as having euthymic mood, intact energy, and intact concentration; denying depression and anxiety; making more effective choices for her life including being more active and engaged in relationships; having improved anxiety with medication and therapy; and denying anxiety and depression despite stopping medications for a month in January 2019. Tr. 23, 889, 892, 909, 966, 1180, 1184, 1193, 1227.

Plaintiff generally argues that the ALJ's finding that she had "greatly stabilized by the alleged amended onset date" was not accurate because "her condition had markedly worsened at the time of her amended onset date."  ECF No. 13 at 15.  In support of this argument, Plaintiff cited evidence of "somewhat" anxious mood and constricted affect, non-linear thoughts, urge to self-harm, disorganized and rapid speech, somewhat labile mood, tearful affect, mildly depressed mood, and a "bit of anxiety."  ECF No. 13 at 15-16 (citing Tr. 905, 914, 919, 922, 926, 931, 944, 947-48, 951, 958, 962, 966).  However, as noted above, the ALJ acknowledges that Plaintiff endorsed increased symptoms at the start of the relevant adjudicatory period, including a bad reaction to prednisone that caused increased symptoms of high urge to self-harm and paranoid thoughts. Tr. 23, 970.

ORDER ~ 13

Moreover, regardless of evidence that could be considered favorable to Plaintiff, it was reasonable for the ALJ to find the severity of Plaintiff's symptom claims was inconsistent with medical evidence from the longitudinal record, including consistent findings of improvement with medication and therapy.  Tr. 21-23. "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  This was a clear and convincing reason, supported by substantial evidence, to discredit Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**B. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.*  If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).  Conversely, "[i]f a treating or examining doctor's

ORDER ~ 14

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. § 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered the opinion of treating provider Jessica Cook, PA-C, examining psychologist Thomas Genthe, Ph.D., and examining psychologist R.A. Cline, Psy.D. ECF No. 13 at 8-13.

### 1. Jessica Cook, PA-C

In March 2018, Jessica Cook, PA-C, Plaintiff's treating provider, completed a medical report form and noted diagnoses of anxiety, depression, and bipolar

ORDER ~ 15

disorder; as well as Plaintiff's symptoms of frequent tension headache pain and chronic neck pain. Tr. 732. She opined that Plaintiff would not need to lie down during the day, her medication would not have any side effects that would limit her activities, and her prognosis was "good." Tr. 732-33. Finally, Ms. Cook opined that work on a regular and continuous basis would *not* cause Plaintiff's condition to deteriorate, but if Plaintiff were attempting to work a 40-hour per work week schedule she would miss work four or more days per month. Tr. 733. Ms. Cook further clarified that this limitation was "unpredictable in nature; high stress environments are often triggers for anxiety/pain." Tr. 733. The ALJ gave her opinion little weight because it was "too vague and contradictory to be helpful informing a [RFC]." Tr. 24.

In support of this finding, the ALJ noted that Ms. Cook's opinion is internally inconsistent because she "does not explain why [Plaintiff] would need so many absences from work if her symptoms would not be exacerbated by otherwise regular and continuous work." Tr. 24. Further, "Ms. Cook explained that [Plaintiff's] absences would be unpredictable, and that high stress environments often triggered her anxiety/pain. This is an insufficient explanation, as stress is a subjective experience and cannot be appropriately used as a vocational term." Tr. 24. Plaintiff argues this is a "manufactured inconsistency, as the evidence indicates that [Plaintiff's] baseline functioning would result in a level of absences opined to by Ms. Cook." ECF No. 13 at 8. However, internal inconsistencies within a physician's report constitute relevant evidence when weighing medical

ORDER ~ 16

opinions. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). In addition, Plaintiff argues that Ms. Cook's notation that her absences would be "unpredictable in nature" is consistent with her diagnosis of bipolar disorder; and that "she only stated that high stress environments were a trigger for symptoms, not the sole cause." ECF No. 13 at 8-9. However, this reasoning was not included as part of Ms. Cook's "explanation" of her opined limitation as to how many days Plaintiff would miss on average every month; nor does it address any inconsistency between this opined limitation and Ms. Cook's finding that Plaintiff's condition would not deteriorate if she worked on a regular and continuous basis. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, and the quality of the explanation provided in the opinion); *Bray*, 554 F.3d at 1228 (a medical opinion may be rejected by the ALJ if it is brief, conclusory, and inadequately supported by clinical findings).

Thus, while Plaintiff attempts to interpret Ms. Cook's opinion in the light most favorable to Plaintiff, it was reasonable for the ALJ to discount the opined limitation because it was not sufficiently explained, particularly in light of the internal inconsistency between Ms. Cook's benign assessment that Plaintiff's condition would *not* deteriorate if she worked on a regular and consistent basis, and her seemingly contradictory finding that Plaintiff would miss 4 or more days of work per month, but those absences would be "unpredictable in nature." Tr. 733; *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence

ORDER ~ 17

is susceptible to more than one rational interpretation).  This was a germane reason for the ALJ to give little weight to Ms. Cook's opinion.

### 2. *Thomas Genthe, Ph.D.*

In October 2017, Dr. Thomas Genthe completed a DSHS evaluation of Plaintiff and opined that she had marked limitations in her ability to understand, remember, and persist in tasks by following detailed instructions; adapt to changes in a routine work setting; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms.[3]  Tr. 785-91.  Dr. Genthe opined that Plaintiff's overall severity rating was marked, and further noted in his "summary and conclusions" that Plaintiff was "unlikely to function adequately in a work setting until her psychological symptoms have been managed more effectively."  Tr. 788-89.

The ALJ gave "some weight" to Dr. Genthe's opinion, and "agree[d] that [Plaintiff] has some social deficits, as evidenced by her occasional circumstantial presentation and reports of social triggers and difficult relationship with her

---

[3] As noted by Plaintiff, Dr. Genthe also opined moderate limitations in "six other basic work activities."  ECF No. 13 at 10; Tr. 788. The ALJ found "some" of the moderate limitations assessed by Dr. Genthe were not well-supported.  Tr. 24. However, the Court declines to consider this finding because Plaintiff does not raise it with specificity in her opening brief.  *See Carmickle*, 533 F.3d at 1161 n.2.

ORDER ~ 18

mother.  However, the marked ratings are inconsistent with her presentation at this evaluation wherein she was cooperative, friendly, euthymic, and had balanced conversational flow." Tr. 24.  An ALJ may reject a medical opinion if it is inconsistent with the provider's own treatment notes.  *See Tommasetti*, 533 F.3d at 1041.  Plaintiff argues that the ALJ "ignored" additional findings by Dr. Genthe that she was tangential and had impaired memory.  ECF No. 13 at 11.  However, Dr. Genthe's own mental status examination findings included findings that Plaintiff was cooperative and friendly, had euthymic affect, had no disturbance in thought content, was fully oriented, had normal immediate memory, accurately spelled the word world forward and backward, had good understanding of her need for treatment, and had fair social maturity. Tr. 790-91.  Plaintiff additionally cites evidence of disorganized thoughts and speech, paranoia, labile mood, and pressured speech around this same time in the relevant adjudicatory period.  ECF No. 13 at 11.  However, as part of the discussion of Dr. Genthe's opinion, the ALJ also notes evidence in the overall record that describes Plaintiff as having normal memory and fund of knowledge, being fully oriented, and able to perform simple math calculations.  Tr. 24, 784.

Based on the foregoing, and regardless of evidence in the overall record that could be considered more favorable to Plaintiff, the Court finds it was reasonable for the ALJ to discount the severity of Dr. Genthe's opined marked limitations because they were inconsistent with contemporaneous treatment notes, and particularly Dr. Genthe's own relatively benign mental status examination

ORDER ~ 19

findings.  *See Burch*, 400 F.3d at 679.  This was a specific and legitimate reason, supported by substantial evidence, for the ALJ to reject the marked limitations opined by Dr. Genthe.

### 3.  R.A. Cline, Psy.D.

In May 2016, Dr. Cline completed a DSHS evaluation of Plaintiff and opined that she had marked limitations in her ability to communicate effectively in a work setting, and complete a normal work day and work week without interruptions from psychologically based symptoms.  Tr. 780-84.  Dr. Cline also assessed moderate limitations in seven additional basic work activities; and opined that the overall severity of Plaintiff's mental impairments was moderate. Tr. 782-83. The ALJ gave Dr. Cline's opinion little weight for several reasons.  Tr. 24-25.

As an initial matter, the ALJ notes that this "one-time evaluation predated the amended onset date by over a year.  Thus, the evaluation occurred during a time not under consideration."  Tr. 24.  Plaintiff does not challenge this finding in her opening brief; thus, the Court may decline to address the issue.  *See Carmickle*, 533 F.3d at 1161 n.2.  Moreover, "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Id.* at 1165.  This was a specific and legitimate reason to grant the opinion little weight.  Next, the ALJ noted that Dr. Cline did not review any records in reaching his opinion; "[t]hus, his opinion did not consider [Plaintiff's] longitudinal mental health history or progress, compared to her presentation that day."  Tr. 24.  Plaintiff argues that this was not a valid reason to reject Dr. Cline's opinion because the ALJ does not "point to any

ORDER ~ 20

evidence that contradicts [Plaintiff's] presentation to the evaluation with Dr. Cline," and "the evidence does not support that Dr. Cline's opinion would have fundamentally changed had he reviewed any of [Plaintiff's] medical records." ECF No. 13 at 12-13.  However, despite evidence in the overall record that may be consistent with Dr. Cline's findings, the extent to which Dr. Cline was "familiar with the other information in [the claimant's] case record," standing alone, is relevant in assessing the weight of the medical opinion.  *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

Finally, the ALJ found that the results of Dr. Cline's evaluation do not support marked ratings because "[u]pon mental status evaluation, [Plaintiff] had somewhat pressured speech, but was otherwise cooperative, demonstrated an average mood, was alert, oriented, had normal memory, and fair concentration." Tr. 25 (citing Tr. 783-84).  An ALJ may reject a medical opinion if it is inconsistent with the provider's own treatment notes.  *See Tommasetti*, 533 F.3d at 1041.  Plaintiff argues that Dr. Cline's opinion was supported by findings of rapid and somewhat pressured speech, difficulty with redirection, interrupting the examiner at times, and variable ability to think abstractly.  ECF No. 13 at 13 (citing Tr. 783-84).  However, the results of Dr. Cline's mental status examination also included findings that she had neatly groomed appearance, congruent mood, bright and full range affect, average to "very good" mood, cooperative attitude, normal orientation, normal perception, normal memory, normal fund of knowledge, normal concentration, at least partially intact abstract thought, and

ORDER ~ 21

intact insight and judgment.  Tr. 783-84.  Thus, while Plaintiff correctly cites mental status examination findings by Dr. Cline that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find the severity of the marked limitations assessed by Dr. Cline were inconsistent with the largely "normal" results of Dr. Cline's own mental status evaluation.  *See Burch*, 400 F.3d at 679.  This was a specific and legitimate reason, supported by substantial evidence, for the ALJ to reject the marked limitations opined by Dr. Cline.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom claims, and properly considered the medical opinion evidence.  After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 14, is

   **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

ORDER ~ 22

1       **DATED** October 18, 2021.

2

3                                          _____
                                                    LONNY R. SUKO
4                                          Senior United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

ORDER ~ 23